## O'CONNER *v.* O'CONNER.

SLANDER.—*Mitior sensus.*— The doctrine that, in actions of slander, the words spoken are to be construed *in mitiori sensu,* has been exploded, and the rule now is, that such words are to be understood according to their plain and natural import, and according to the ideas they are calculated to convey to those to whom they are addressed.

SAME.—In a complaint for slander, the words charged were, "they have killed my son, and are trying to cheat me out of my land," the death of the son being averred, and the words being charged to have been spoken of and concerning the plaintiff.

*Held*, that the words were actionable.

APPEAL from the *Hendricks* Circuit Court.

GREGORY, J. — Suit by the appellant against the appellee, in slander. The complaint contains four paragraphs, a demurrer to each of which was sustained by the court below, and final judgment thereon.

The ruling on the first paragraph was correct, for the reason that it is alleged that the slanderous words charged were spoken " of and concerning the brothers (*Patrick* and *Michael Clune*) of said plaintiff;" and this averment is not contradicted by the other averments, except by innuendo, which cannot control a direct and positive allegation.

The words charged in the second paragraph are: "*They have killed my son, and are trying to cheat me out of my land.*" It is averred, that the defendant meant, and intended to charge, that the plaintiff, together with her brothers, and the physician who attended one *John O'Conner*, the husband of the plaintiff, in his last sickness, had killed and murdered the said *John*, and was trying to cheat and defraud the defendant out of his land, and he (the defendant) was so understood to mean and charge by the persons then present.

The slanderous words in the third paragraph are: "*In room of her trying to help him, she seemed to do all she could to hurry him out of the world.*" It is alleged that the defendant thereby charged that the plaintiff had killed and murdered her husband, *John O'Conner*, who had before that time departed this life.

The fourth paragraph charges a conversation between the defendant and one *Peleg Thompson*, of and concerning the death of *John O'Conner*, and of and concerning the plaintiff and others, in which *Thompson* said, "there was something wrong; there must be a nigger in the fence about that matter;" to which defendant replied, "*they have killed my son, and are trying to wrong me out of my property;*" to which *Thompson* rejoined, "that was pretty hard;" to which the defendant responded, "*it is hard; John, my son, was sick, in room of her doing anything to help him, she seemed more inclined to do things to help him out of the way. My daughter-in-law talks as though I have no right here; I have come to get your name; I may have to call you up as a witness sometime. Mr. and Mrs. Thompson, they have killed my son, and now they are trying to wrong me out of my rights; it seems to me, that instead of their doing him any good, they were trying to help him out of the way.*" It is averred that the defendant thereby charged, that the plaintiff, together with others, had killed and murdered *John O'Conner*, his son, and the husband of the plaintiff, and was so understood to mean by the persons then present.

The complaint contains the proper allegations, by *innuendo*, of the persons meant by the defendant in the words spoken by him.

The doctrine of construing words *in mitiori sensu* has been exploded, and a more rational rule now prevails, that words are to be understood according to their plain and natural import, according to the ideas they are calculated to convey to those to whom they are addressed. *Mr. Starkie*, in his valuable treatise on slander, states the rule as follows: "Both judges and jurors shall understand words in that sense which the author intended to convey to the minds of the hearers, as evinced by the whole circumstances of the case. It is the province of the jury, where doubts arise, to decide whether the words were used maliciously, and with a view to defame, such being matter of fact, to be collected from all concomitant circumstances, and for the court to determine whether such words, taken in the malicious sense imputed to them, can, alone, or by the aid of the circumstances stated upon the record, form the legal basis of an action." *Demarest* v. *Haring*, 6 Cowen 76; *Rodgers* v. *Lacey*, 23 Ind. 507; *Harrison* v. *Findley*, *id.* 265. In this latter case, the authorities are cited, showing what words will be actionable, imputing the crime of murder or manslaughter. The cases of *Peake* v. *Oldham*, Cowper's Rep. 275, and *Ford* v. *Primrose*, 5 Dowling & Ryland, 287, (16 Eng. Com. Law, 234,) are very much in point in the case in judgment.

In *Button* v. *Hayward, et ux.*, (8 Mod. 24,) the words spoken by the wife were: "*George Button* (the plaintiff,) is the man who killed my husband;" her first husband being dead. After verdict for the plaintiff, it was moved in arrest of judgment, that these words are not actionable for the uncertainty of the word *killing*, for it might be justifiable, or in his own defense, or *per infortunium*, and shall not be presumed felonious, and so made actionable by intendment, for it is a maxim that words shall be taken in *mitiori sensu*. But it was said by PRATT, C. J., "There can

O'Conner *v.* O'Conner.

be no question but, at this day, these words are actionable. In former times, words were construed *in mitiori sensu,* to avoid vexatious actions, which were then too frequent; but now, *distinguenda sunt tempora,* and we ought to expound words according to their general signification, to prevent scandals, which are at present too frequent. *We are to understand words in the same sense as the hearers understood them; but when words stand indifferent, and are equally liable to two distinct interpretations, we ought to construe them in mitiori sensu; but we will never make any exposition against the plain natural import of the words.* The word *killing* signifies a voluntary and unlawful killing, and is actionable." 1 Starkie on Slander 51. The case of *Shinloub* v. *Ammerman,* 7 Ind. 347, cited by counsel for appellee, is not in point. It is not *perjury* to swear to a lie, but an unlawful killing is murder or manslaughter. In the case of *Drummond* v. *Leslie,* 5 Blackf. 453, this court held, that although the words laid in a declaration of slander do not contain a directly affirmative charge that the plaintiff had committed *forgery,* yet, if they were calculated to induce the hearers to *suspect* that the plaintiff had committed it, they are actionable.

In the light of these authorities, the circuit court erred in sustaining the demurrers to the second, third and fourth paragraphs of the complaint.

The judgment is reversed, and the cause remanded to said court, with directions to overrule the demurrers to the second, third and fourth paragraphs of the complaint, and for further proceedings in accordance with this opinion.

Costs against the appellee.

*C. C. Nave,* for appellant.

*L. M. Campbell,* for appellee.